IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


NICOLAS MEARS,                    :
                                  :
          Plaintiff               :
                                  :
     v.                           :    CIVIL NO. 3:CV-17-1463
                                  :
SUPERINTENDENT KAUFFMAN, ET AL., :    (Judge Conaboy)
                                  :
          Defendants              :

_____

## MEMORANDUM
## Background

     This <u>pro</u> <u>se</u> complaint alleging civil rights and state tort
claims was filed in the Huntingdon County Court of Common Pleas by
Nicholas Mears regarding his confinement at the State Correctional
Institution, Huntingdon, Pennsylvania (SCI-Huntingdon).  Counsel
for Defendant Jessica Cousins, PA-C subsequently filed a notice of
removal of Plaintiff's action to this Court pursuant to 28 U.S.C.
§§ 1441.  <u>See</u> Doc. 1, p. 1.

     Named as Defendants are Chief Grievance Officer Dorina
Varner of the Pennsylvania Department of Corrections (DOC), and the
following SCI-Huntingdon officials:  Superintendent Kevin Kauffman;
Prison Rape Elimination Act (PREA) Coordinator Mandy Sipple;[1]
Lieutenant Daniel Wendle; and Psychologist Christina Neri.   Also
named as Defendants are Chaplain Burks and Psychiatrist Cousins,
both of whom are described as being independent contractors who
work at the prison.

_____

1.  Sipple also appears to be a Classification and Program Manager
at the prison.  <u>See</u> Doc. 2, p. 22.

According to the Complaint, Plaintiff was subjected to verbal harassment by Chaplain Burks during a religious service in the SCI-Huntingdon chapel on January 1, 2017. It is alleged that Burks singled out the Plaintiff and another prisoner in front of a large gathering of prisoners by insinuating that there was homosexual activity between the two inmates.[2] Plaintiff contends that the degrading and false verbal harassment by Burks violated his religious freedom rights under the First Amendment as well as other constitutional protections and caused him to suffer emotional distress. Uon the conclusion of the service, Burks purportedly apologized in private to the Plaintiff and invited him back to attend services the following week. Mears filed an institutional grievance against Burks four (4) days later.

Upon arriving at the next religious service on January 8, 2017, the Plaintiff and the other prisoner were immediately removed from the chapel at the direction of Burks allegedly in retaliation for the filing of a grievance regarding the prior incident. After being removed, Lieutenant Wendle allegedly told the Plaintiff that although the officer didn't know what happened, he "suggested" that the Plaintiff should either stop going to services conducted by Burks or to attend without the other prisoner. Doc. 1, ¶ 17. The Lieutenant purportedly added that if anything else occurred with

_____

2. A copy of an inital response to the grievance provided by Mears indicate that it was the determination of Defendant Sipple that while Burks was conducting the service Plaintiff and the other inmate were engaged in an ongoing disruptive conversation. See Doc. 2, p. 22. Moreover, Sipple noted that a few weeks earlier Mears and the other prisoner had engaged in similar conduct during a religious service conducted by a different chaplain. Nonetheless, Sipple agreed that Burks needed to be coached regarding the way he handled the situation.

respect to the aforementioned events, Mears would be placed in segregation. Plaintiff asserts that the conduct of Defendant Wendle likewise violated his First Amendment rights.

It is next alleged that Defendants Kauffman, Nerri, and Cousins, failed to properly supervise and train Burks, implement policies to prevent harassment and retaliation by staff, and were deliberately indifferent to Burks' actions by failing to take corrective measures. It is further asserted that Chief Grievance Officer Varner and PREA Coordinator Sipple likewise failed to take action in response to the Plaintiff's grievance regarding Burks' conduct. The Complaint also raises an allegation of conspiracy and state law claims of invasion of privacy and negligence against the Defendants.

Presently pending is a motion to dismiss the complaint for failure to state a claim filed by the Corrections Defendants (Varner, Kauffman, Sipple, Wendle, and Neri).[3] <u>See</u> Doc. 7. The opposed motion is ripe for consideration.

## <u>Discussion</u>

Corrections Defendants claim entitlement to dismissal on the grounds: (1) the claims against Defendants Kauffman, Varner, Simple, Neri, and Wendle should be dismissed for lack of personal involvement; (2) a cognizable First or Eighth Amendment claim is not alleged against Wendle; (3) a viable assertion of retaliation against Wendle is not raised in the Complaint; and (4) the verbal threat by Lieutenant Wendle does not rise to level of a

---

3. Cousins is represented by separate counsel and Burks is proceeding <u>pro</u> <u>se</u>. They have filed separate motions to dismiss which have not yet been addressed.

constitutional claim; (5) the allegation of conspiracy is insufficient; (6) Plaintiff cannot recover monetary damages for emotional injury; and (7) the state law claims by Plaintiff are barreed from consideration.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. A court in addressing a motion to dismiss must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007)(quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).

A complaint must set forth facts that, if true, demonstrate a plausible right to relief. <u>See</u> Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. <u>Id</u>. at 556. A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 , 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." <u>Id</u>. Legal conclusions must be supported by factual allegations and the

complaint must state a plausible claim for relief.  See id. at
679.[4]

The reviewing court must determine whether the complaint
"contain[s] either direct or inferential allegations respecting all
the material elements necessary to sustain recovery under some
viable legal theory."  Id. at 562; see also Phillips v. County of
Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a
motion to dismiss, a plaintiff must allege in his complaint "enough
facts to raise a reasonable expectation that discovery will reveal
evidence of the necessary element[s]" of a particular cause of
action).  Finally, it is noted that pro se pleadings must be
afforded liberal construction.  See  Haines v. Kerner, 404 U.S.
519, 520 (1972).

**Emotional Injury**

The Complaint asserts that Plaintiff has suffered emotional
distress for which he seeks to recover monetary damages.  See Doc.
2, p. 16.  There is no allegation that Mears has suffered any
accompanying physical injury.  Corrections Defendants argue that
Plaintiff is not entitled to recover compensatory damages on his
federal civil rights claims for mental anguish or emotional injury.
See Doc. 8, p. 17.

42 U.S.C. § 1997e(e) provides that "[n]o federal civil
action may be brought by a prisoner confined in a jail, prison or
other correctional facility, for mental or emotional injury
suffered while in custody without a prior showing of physical

---

4.  "Factual allegations must be enough to raise a right to relief
above the speculative level, on the assumption that all the
allegations in the complaint are true (even if doubtful in fact)."
Twombly, at 555.

injury." In <u>Allah v. Al-Hafeez</u>, 226 F.3d 247,250 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit recognized that where a plaintiff fails to allege actual injury, Section 1997e(e) bars recovery of compensatory damages. However, the Third Circuit Court of Appeals added that an inmate alleging a violation of his constitutional rights may still pursue the action to recover nominal and/or punitive damages even in the absence of compensable harm.

Under the standards announced in <u>Allah</u>, this Court agrees that Plaintiff's request for monetary relief to the extent that it seeks compensatory damages for emotional and psychological injuries for violation of his constitutional rights is barred by Section 1997e(e).

**Personal Involvement**

Corrections Defendants' second argument contends that the Complaint fails to allege personal involvement in constitutional misconduct by Defendants Kauffman, Varner, Sipple, Neri, and Wendle. <u>See</u> Doc. 8, p. 11.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims brought cannot be premised on a theory of <u>respondeat</u> <u>superior</u>. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207

(3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077 (3d Cir. 1976).  As explained in <u>Rode</u>:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

<u>Rode</u>, 845 F.2d at 1207.

Superintendent Kauffman, Chief Grievance Officer Varner, Lieutenant Wendle, and Coordinator Sipple were each clearly employed in supervisory roles with either the DOC or SCI-Huntingdon.  There are no facts which clearly show that any Corrections Defendant including Psychologist Neri directly supervised Chaplain Burks or that Burks' alleged actions were initiated pursuant to a directive from any of the Corrections Defendants.  Pursuant to the standards announced in <u>Rode</u>, any claims against the Corrections Defendants solely based upon their respective supervisory roles cannot proceed.

It is undisputed that Plaintiff filed an institutional grievance and raised other complaints with members of the correctional staff regarding the alleged mistreatment by Chaplain Burks.  Mears' pending action attempts to establish liability against Defendants Kauffman, Varner, Neri, Sipple due to their responses or non-response to his administrative grievance and complaints.  There is also no indication that Psychologist Nerri

7

was afforded the authority or discretion to take action against Chaplain Burks in response to any inmate complaints.

Prisoners have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). Pursuant to those decisions, any attempt by Plaintiff to establish liability against Corrections Defendants based upon their handling of his administrative grievance and post incident complaints does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Based upon the above well settled standards, dismissal in favor of Defendants Kauffman, Varner, Nerri, Sipple and Wendle with respect to any claim asserted them which are premised upon their respective purported failures to take action in response to Mears' complaints and grievance is appropriate.[5]

With respect to the claim that the Corrections Defendants failure to properly train Chaplain Burks, it is noted that Burks was not directly employed by either the DOC or SCI-Huntingdon but rather was an independent contractor who was apparently retained for the limited purpose of conducting religious services for the SCI-Huntingdon inmate population. There is also no contention that other prison chaplains received training which was not given to Burks. Second, the actions attributed to Burks are insufficient to support a claim that the Chaplain's alleged need for more training was so apparent that the failure to provide additional training constituted deliberate indifference. See Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001) (the scope of failure to train is narrow). There are also no facts alleged showing that the job responsibilities of any of the Corrections Defendants included the training of prison chaplains.

Pursuant to the above discussion, the failure to train claims against Defendants Kauffman, Varner, Nerri, and Sipple will be dismissed for lack of personal involvement. Dismissal will also be granted with respect to the failure to supervise and or train claims against Lieutenant Wendle. However, the remaining First

---

5. Exhibits submitted by the Plaintiff alos acknowledge that the response to his grievance agreed that Burk would be coached regarding the was y he responded to the Plaintiff's conduct.

Amendment allegations against Wendle will not be dismissed for lack of personal involvement.

## **Retaliation**

Plaintiff asserts that he was verbally threatened by Lieutenant Wendle with placement in segregation. Corrections Defendants assert that the conduct alleged against Wendle does not support a claim of retaliation.[6]

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two

---

6. The assertion of retaliation by Chaplain Burks will be addressed separately.

events.  See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005).  Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997). In this case it is noted that there is no indication that there had been any preexisting hostility between Wendle and Mears.

Once Plaintiff has made a prima facie case, the burden shifts to Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

As noted in Allah, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied.  Thus, the relevant inquiry is not whether the alleged retaliatory conduct was unconstitutional.  On the contrary, Plaintiff only needs to establish that he was subjected to adverse action in retaliation for his engagement in constitutionally protected conduct.

Despite the liberal treatment afforded to pro se litigants, the Plaintiff has not set forth a viable claim of retaliation. There is no discernible claim that Wendle retaliated against Plaintiff for practicing his religious beliefs, a constitutionally

11

protected activity.  Rather, Plaintiff contends only that he was verbally threatened with placement in segregation by Wendel if the inmate engaged in any future institutional misconduct and that the Lieutenant suggested only that Mears either not attend Burks' religious service or do so without the other inmate.

There is also no allegation that Mears was actually subjected to any type of retaliatory mistreatment or that Wendle had any retaliatory motive whatsoever.  On the contrary, Plaintiff offers no facts to support a claim that Wendel had any reason to engage in retaliation.  Based upon those considerations, the <u>Rauser</u> adverse requirements were not met.  Dismissal will be granted with respect to any allegation of retaliation against Lieutenant Wendle. However, the Court offers no opinion, at this time, as to whether a viable allegation of retaliation is set forth against Chaplain Burks.

**<u>Verbal Harassment</u>**

It is also asserted that the claims of verbal harassment by Wendle are constitutionally insufficient.  <u>See</u> Doc. 8, p. 15.  As previously noted, it is alleged that the Lieutenant verbally threatened the Plaintiff with placement in segregation if anything else transpired and suggested that Mears and the other prisoner who was removed not jointly attend any future services conducted by Burks.

The use of words generally cannot constitute an assault actionable under § 1983.  <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 n.7 (2d Cir.); <u>Maclean v. Secor</u>, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); <u>Murray v. Woodburn</u>, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional

12

deprivation."); <u>Prisoners' Legal Ass'n v. Roberson</u>, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. <u>Balliet v. Whitmire</u>, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), <u>aff'd</u>, 800 F.2d 1130 (3d Cir. 1986) (Mem.). A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, <u>see</u> <u>Prisoners' Legal Ass'n</u>, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

Verbal harassment, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. <u>See</u> <u>Northington v. Jackson</u>, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); <u>Douglas v. Marino</u>, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). Moreover, alleged instances of verbal harassment which are not accompanied by any physical contact are constitutionally insufficient. <u>See</u> <u>Hart v. Whalen</u>, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008); <u>Wright v. O'Hara</u>, 2004 WL 1793018 *7 (E.D. Pa. 2004)(correctional officer's words and gestures, including lunging at prisoner with a clenched fist were constitutionally insufficient because there was no physical contact).

There is no indication that the verbal threat of future segregation allegedly voiced against Mears was accompanied by a reinforcing act involving a deadly weapon as contemplated under Northington and Douglas. More importantly, it is not alleged that the alleged verbal abuse was accompanied by any physically intrusive behavior. Given the circumstances described by Plaintiff, the purported verbal threat of future placement in segregation attributed to Lieutenant Wendle was not of such magnitude to shock the conscience as contemplated by this Court in S.M. v. Lakeland School District, 148 F. Supp.2d 542, 547-48 (M.D. Pa. 2001) and thus, did not rise to the level of a constitutional violation.

**Conspiracy**

Corrections Defendants' next argument contends that the Complaint does not raise a viable claim of conspiracy. See Doc. 8, p. 16. Since there are no facts asserted showing any agreement in furtherance of any alleged constitutional violation, Corrections Defendants conclude that a viable conspiracy claim has not been stated.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992), cert. denied, 506 U.S. 1079 (1993); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). The Third Circuit Court of Appeals has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations." Rose, 871 F.2d at 366. Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth

14

allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545. Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. Id.; Rose, 871 F.2d at 366; Young, 926 F.2d at 1405 n.16; Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982). Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young v. Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

There are no averments of fact set forth in the Complaint that reasonably suggest the presence of an agreement or concerted activity between the Corrections Defendants. Although Mears makes raises a vague claim of conspiracy, he has not alleged any facts showing any communication or cooperation among any Defendants from which an agreement could be inferred. This Court agrees that the Complaint has not adequately alleged that any of the alleged acts of constitutional misconduct were the result of a conspiracy.

Dismissal will be granted in favor of the Corrections Defendants
with respect to the claim of conspiracy.

**Eighth Amendment**

Plaintiff generally claims that the comments made by
Lieutenant Wendle and the post-incident failure of Corrections
Defendants to undertake corrective measures constituted cruel and
unusual punishment under the Eighth Amendment. Corrections
Defendants maintain that a viable Eighth Amendment claim is not set
forth in the Complaint. See Doc. 8, p. 12.

The prohibition of cruel and unusual punishment imposes
duties on prison officials to provide prisoners with the basic
necessities of life, such as food, clothing, shelter, sanitation,
medical care and personal safety. See Farmer v. Brennan, 511 U.S.
825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993).
Prison conditions may amount to cruel and unusual punishment if
they cause "unquestioned and serious deprivations of basic human
needs ... [that]deprive inmates of the minimal civilized measure of
life's necessities." Tillman v. Lebanon County Correctional
Facility, 221 F.3d 410 (3d Cir. 2000).

An Eighth Amendment claim against a prison official must
meet two requirements: (1) "the deprivation alleged must be,
objectively, sufficiently serious;" and (2) the "prison official
must have a sufficiently culpable state of mind."[7] Farmer, 511

---

7.    Under Farmer, deliberate indifference is a subjective
standard in that the prison official must actually have known or
been aware of the excessive risk to inmate safety. Beers-Capitol
v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001). This requirement of
actual knowledge means that "the official must both be aware of
facts from which the inference could be drawn that a substantial
risk of serious harm exists, and he must also draw the inference."
                                                    (continued...)

U.S. at 834 (1994).  In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety."  <u>Id</u>.  In reviewing conditions of confinement claims, courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment.

Based upon an application of the above standards, this Court agrees that the allegation that Lieutenant Wendle suggested to Plaintiff that he attend future services conducted by Burks either by himself or not at all and an accompanying warning that future problems with Chaplain Burks would result in Mears being placed in disciplinary confinement do not rise to the level of a viable Eighth Amendment claim.  The purported remarks, even if true, do not deprive Mears of any basic human needs or constitute deliberate indifference to a health or safety risk.  The same determination holds true for the assertion that the Corrections Defendants failed to initiate post incident corrective measures other then to provide Burks with coaching with respect to the way he had addressed the Plaintiff's conduct during the religious service.

**<u>First Amendment</u>**

As previously discussed, plaintiff asserts that the comments made by Lieutenant Wendle violated his rights under the First Amendment.  Correction Defendants contend that a verbal threat to Plaintiff that he would be punished for any related future

_____

7.  (...continued)
<u>Farmer</u>, 511 U.S. at 837.

misconduct and a suggestion regarding his future attendance art religious services conduct by Chaplain Burks does not constitute an actionable First Amendment claim.  <u>See</u> Doc. 8, p. 14.

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..."  U.S. Const. Amend. I. It is well settled that the "government must avoid excessive interference with, or promotion of religion."  <u>VanOrden v. Perry</u>, 125 S. Ct 2854, 2868 (2005)(Breyer, concurring).  An inmate must be afforded reasonable opportunity to exercise his religious beliefs under the First Amendment.  <u>Cruz v. Beto</u>, 405 U.S. 319, 322 n.2 (1972).

It is clear that inmates "do not forfeit all constitutional protections by reason of their conviction and confinement in prison."  <u>DeHart v. Horn</u>, 227 F.3d 47, 50 (3d Cir. 2000) (quoting <u>Bell v. Wolfish</u>, 441 U.S. 441 U.S. 520, 545 (1979)).  Prisoners must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment.  <u>Cruz v. Beto</u>, 405 U.S. 319, 322 n.2 (1972).  However, imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion. <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 407 (1989).

To set forth an actionable First Amendment claim, an inmate plaintiff must establish that he had a sincerely held belief which was religious in nature and that a prison official's actions substantially burdened his exercise of those religious beliefs. <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 215-19 (1972); <u>Africa v. Pennsylvania</u>, 662 F.2d 1025, 1029-30 (3d Cir. 1981).

With respect to their first requirement, there is no argument by Corrections Defendants that Plaintiff has not satisfied his burden of establishing that he had a sincerely held belief which was religious in nature.

Substantial burden is satisfied when: (1) a prisoner is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning a precept of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. <u>Gould v. Beard</u>, 2010 WL 845566 * 4-5 (W.D. Pa. 2010).

Even if proven, the remarks attribute to Lieutenant Wendle were simply not of such magnitude as to substantially burden Inmate Mears' exercise of his religious beliefs. This is not a case where a correctional officer prevented a prisoner from practicing his beliefs or attending a religious service. There is no claim that Wendle removed Plaintiff from the services.

On the contrary, after the incident Wendle suggested only that in order to avoid a future problem, Mears might not want to attend religious services conducted by Burks or to do so without the other prisoner involved in the incident. As such, this is not a case where a correctional officer prevented a prisoner from attending a religious service. It is also noted that this action was not initiated until several months after the incident and there is no allegation that Plaintiff was ever refused permission to attend any religious service after the January 8, 2017 incident.

It is again noted that this discussion does not address the issue of whether Chaplain Burks' purported conduct violated the First Amendment.

## ADA

Plaintiff's opposing brief to the motion to dismiss indicates for the first time that the conduct attributed to the Corrections Defendants also violated his rights under the Americans with Disabilities Acr (ADA). <u>See</u> Doc. 16, p. 5. The Moving Defendants contend that Plaintiff should not be permitted to proceed on an ADA claim. <u>See</u> Doc. 17, p. 2.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.[8] The ADA seeks "to assure even handed treatment and the opportunity for [disabled] individuals to participate in and benefit from programs [receiving financial assistance]. <u>Southeastern Community College v. Davis</u>, 442 U.S. 397 (1979). <u>P.C. v. McLaughlin</u>, 913 F.2d 1033, 1041 (2d Cir. 1990). The "evenhanded treatment" requirement does not, however, impose an affirmative obligation on public entities to expand

---

8. The regulations implementing the ADA define a "qualified individual with a disability" as:

> "An individual with a disability who, with or without reasonable modifications to rules, policies or practices, . . . meets the essential eligibility requirements for the . . . participation in programs or activities provided by a public entity."

28 C.F.R. § 35.104 (1993).

existing programs but only that disabled individuals receive the same treatment as those who are not disabled. It has been recognized that the provisions of the ADA are applicable to prisoners confined in state correctional institutions. See Pa. Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998).

Based upon a liberal construction of the Complaint, there is no ADA claim set forth in that pleading. Plaintiff has also not sufficiently demonstrated that he is disabled for purposes of the ADA. Second, the alleged conduct by the Corrections Defendants does not set forth a viable basis for a claim that Plaintiff was subjected to discrimination on the basis of any disability. Accordingly, the Court will grant the request for dismissal of Mears' ADA claim.

## Pendent Jurisdiction

To the extent that Plaintiff wishes to pursue state law claims of negligence against the Corrections Defendants,[9] federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts. See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also Aldinger v. Howard, 427 U.S. 1, 9 (1976). Corrections Defendants contend that any such negligence claims are barred by Pennsylvania's doctrine of soverign immunity. See Doc. 8, p. 21.

A district court may decline to exercise supplemental jurisdiction over a claim when the court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. §

---

9. It also appears that Mears raises state law claims of invasion of privacy and defamation against Chaplain Burks. Those allegations will not be addressed herein.

1367(c)(3) (1997). Decisions regarding pendent jurisdiction should be premised on considerations of judicial economy, convenience and fairness to the litigants. New Rock Asset Partners v. Preferred Entity Advancements, 101 F.3d 1492, 1505 (3d Cir. 1996)(citation omitted).

Once jurisdiction has been exercised over the state claim, elimination of the federal claim does not deprive the court of jurisdiction to adjudicate the pendent claim. Id. (citing Lentino v. Fringe Emp. Plans, Inc., 611 F. 2d 474, 479 (3d Cir. 1979)). However, when the federal claim is dismissed prior to trial, a district court should decline to decide the pendent state claims, "unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).

Pennsylvania's Commonwealth Court has recognized that a negligent failure to protect a prisoner from abuse or assault is not one of the instances enumerated under § 8522(b). See Steinberg v. Department of Public Welfare, 405 A.2d 1135 (Pa. Cmwlth. 1979)(an employee's state law claim that staff negligently failed to protect her from sexual assault by two student prisoners at youth development center was barred by doctrine of sovereign immunity). Once again this determination is limited to any state law claims asserted against the Corrections Defendants. An appropriate Order will enter.

S/Richard P. Conaboy
Richard P. Conaboy
United States District Judge

July 26, 2018

22

DATED: JULY   , 2018